IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>KEITH EUGENE PENDILL,<br><br>Defendant/Movant. | CR 23–100–BLG–SPW<br><br><br>ORDER |

On August 23, 2023, a grand jury charged Defendant/Movant Keith Eugene Pendill with social security fraud in violation of 42 U.S.C. § 408(a)(4) (Count 1), healthcare fraud in violation of 18 U.S.C. § 1347 (Count 2), and theft of government money in violation of 18 U.S.C. § 641 (Count 3). (Doc. 1.) The basis of the charges was that Pendill concealed his self-employment from the Social Security Administration ("SSA") so he could receive Social Security Disability Insurance ("SSDI") benefits. (PSR at ¶ 23.) Specifically, Pendill started a business without notifying the SSA and paid himself a wage that was below the SSDI program's eligibility threshold. (*Id.* ¶¶ 7–13, 20–23.) The SSA determined that Pendill received SSDI and Medicare benefits he was not entitled to between

1

March 2007 and April 2021, resulting in an overpayment of $348,306.24. (*Id.* ¶¶ 15, 26.)

On July 11, 2024, Pendill pled guilty to Count 3 pursuant to a plea agreement. (*See* Docs. 25, 26, 28, 29.) On November 7, 2024, Pendill was sentenced to time served with three years of supervised release. (Doc. 35 at 2–3.) He was also ordered to pay restitution in the amount of $76,003.00 for the SSDI and Medicaid benefits he received between September 2018 and July 2021, (*id.* at 6), the amount agreed to in the plea agreement, (Doc. 25 at ¶ 13). Counts 1 and 2 of the Indictment were dismissed. (Doc. 35 at 1.)

In March 2025, the SSA began to withhold Pendill's monthly Social Security Retirement benefit to administratively collect the overpayment amount of $316,336.74, which consisted of the SSDI benefits he received between March 2007 and August 2018. Pendill attempted to appeal this decision, *see* 20 C.F.R. § 404.902, but his request was denied due to his "fraud conviction," (Doc. 51-1). The SSA took the position that no administrative or judicial review was appropriate due to his conviction, stating "[w]e must withhold your full monthly benefit until your overpayment is completely recovered." (Doc. Doc. 51-3 at 1; Doc. 51-2 at 1 (citing 20 C.F.R. § 404.903).)

On April 4, 2025, Pendill filed a pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Docs. 40, 42.) After a preliminary review,

2

three of Pendill's four claims were dismissed, and defense counsel was ordered to respond to a single remaining ineffective assistance of counsel claim, i.e., "that counsel failed to advise him of the repercussions of pleading guilty as it related to his Social Security benefits and loss thereof." (Doc. 43 at 5–6.)  On August 22, 2025, defense counsel filed an affidavit in response.  (Doc. 45.)  The government was then ordered to answer, (Doc. 48), and did so on April 27, 2026, (Doc. 51).  In its Answer, the government addressed Pendill's ineffective claim but also notified the Court that "the SSA is no longer automatically applying [Pendill's] conviction to the March 2007 through August 2018 overpayment and has afforded Pendill his right to appeal the overpayment." (Doc. 51 at 6.)  For the reasons provided below, Pendill's habeas motion is denied.[1]

## ANALYSIS

The Sixth Amendment guarantees that "[i]n all criminal proceedings, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  This right extends to all "critical stages of a

---

[1] An evidentiary hearing need not be held if the issues can be conclusively decided based on the evidence in the record. *Blackledge v. Allison*, 431 U.S. 63, 80–83 (1977); *see United States v. Mejia-Mesa*, 153 F.3d 925, 929 (9th Cir. 1998) (explaining that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief").  Here, the habeas record includes not only Pendill's criminal docket, but also defense counsel's affidavit, (Doc. 45), and the SSA's correspondence with Pendill, (Docs. 51-1 to 51-4).

criminal proceeding, including when [the defendant] enters a guilty plea." *Lee v. United States*, 582 U.S. 357, 363 (2017) (internal quotation marks omitted).  Thus, defense counsel must "inform a defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forgo." *Libretti v. United States*, 516 U.S. 29, 50–51 (1995).  The "right to counsel is the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added).  To show that counsel was ineffective, a petition must show that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 692 (1984).  That is, the petition must show not only that there was a deficiency, but that the deficiency was prejudicial. *Id.* at 692.  However, before asking whether defense counsel's performance is deficient under *Strickland*, courts must first determine whether the conduct at issue even falls within "the Sixth Amendment's ambit." *Chaidez v. United States*, 568 U.S. 342, 352 (2013).  Because the conduct at issue here does not, Pendill's motion fails at this preliminary step.

Before 2010, state courts and lower federal courts distinguished between direct and collateral consequences of a guilty plea, generally holding "that

4

counsel's failure to inform a defendant of the collateral consequences of a guilty plea is never a violation of the Sixth Amendment." *Id.* at 350 (internal quotation marks omitted). Direct consequences are those that are "definite, immediate, or automatic." *United States v. Hollins*, 70 F.4th 1258, 1262 (9th Cir. 2023). Collateral consequences, on the other hand, are those that are "still uncertain at the time a defendant enters his plea" or one that "is outside the power of the sentencing judge." *Id.* For example, such collateral consequences may include the possibility of a felony prosecution for reentry following deportation, exposure to civil tax litigation, or revocation of parole from a separate conviction. *See United States v. Littlejohn*, 224 F.3d 960, 965 (9th Cir. 2000) (collecting cases).

Although the Supreme Court never directly adopted the distinction lower courts made between direct and collateral plea consequences, it recognized that a line had been drawn. *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010). It then blurred that line by holding that defense counsel provided constitutionally deficient representation by failing to advise the defendant that his guilty plea made him subject to automatic deportation. *Id.* at 364–66. In so doing, the Court explained that it was "uniquely difficult to classify [deportation] as either a direct or a collateral consequence" "because of its close connection to the criminal process." *Id.* at 366. It therefore rejected this dichotomy in this context, "conclud[ing] that advice regarding deportation is not categorically removed from the ambit of the

5

Sixth Amendment right to counsel[ and therefore] *Strickland* applie[d]." *Id.* Nevertheless, the Court made clear that it was not rejecting the collateral and direct consequence distinction wholesale. *Id.* at 365 ("Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation."); *see also United States v. Reeves*, 695 F.3d 637, 640 (7th Cir. 2012) ("*Padilla* is rife with indications that the Supreme Court meant to limit its scope to the context of deportations only."). Nor has it done so since. *See Chaidez*, 568 U.S. at 349 n.5 ("We have never attempted to delineate the world of 'collateral consequences,' nor do we do so here."). And the circuits have maintained a "direct" versus "collateral" distinction in the plea context. *See Hollins*, 70 F.4th at 1262 (determining that civil commitment is a collateral consequence of conviction in the context of a district court's Rule 11 obligations); *Patel v. United States*, 156 F.4th 342, 348–49 (3d Cir. 2025) (collecting cases).

Here, Pendill's loss of social security benefits is a collateral consequence of his guilty plea, which means counsel's alleged failure to advise him of that consequence falls outside the protections afforded by the Sixth Amendment and *Strickland*. The SSA's decision to withhold Pendill's overpayment amount was neither certain at the time of sentencing nor determined by the undersigned. *Compare Littlejohn*, 224 F.3d at 965–67 (concluding that 21 U.S.C. § 862(a), which "automatically strips" certain benefits from a defendant at the time of

6

conviction is a "direct" consequence) *with United States v. Morse*, 36 F.3d 1070, 1072 (11th Cir. 1994) (concluding that "advice as to a potential loss of federal benefits for a temporary period of time . . . is a collateral consequence of pleading guilty"). Moreover, that refusal was not "automatic," and the SSA has since permitted Pendill to appeal its adverse decision. (*See* Doc. 51-4.) His ineligibility is therefore the "result of other governmental agencies' actions." *Littlejohn*, 224 F.3d at 967. Because the alleged failure was tied to a collateral consequence, the Court does not reach *Strickland*.[2]

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). A certificate of appealability is not warranted here.

---

[2] As argued by the government, if *Strickland* were to apply here, Pendill's claim would fail under both prongs. (*See* Doc. 51 at 11–14.)

7

CONCLUSION

Accordingly, IT IS ORDERED that

1. Pendill's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Doc. 40) is DENIED.

2. A certificate of appealability is DENIED. The Clerk shall immediately process the appeal if Pendill files a Notice of Appeal.

3. The Clerk shall ensure that all pending motions in this case and in CV 25–43–BLG–SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Pendill.

DATED this 22nd day of June, 2026.

Susan P. Watters, District Judge
United States District Court

8